UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

MARIANO SCOTTO,

        Plaintiff,

    -v-                                 No.  18-CV-04228-LTS

THE CITY OF NEW YORK; POLLY
TROTTENBERG, as Commissioner of the
New York City Department of Transportation;
ERICA CARAWAY, individually and in her
official capacity of Agency Advocate, New
York City Department of Transportation,

        Defendants.

--------------------------------------------------------x

<u>MEMORANDUM OPINION AND ORDER</u>

        In this action, which was removed to this Court from New York state court,

Plaintiff Mariano Scotto ("Mr. Scotto" or "Plaintiff") brings this action against The City of New

York (the "City"), Polly Trottenberg in her official capacity as Commissioner of the New York

City Department of Transportation, and Erica Caraway, individually and in her official capacity

as Agency Advocate, New York City Department of Transportation (collectively, "Defendants").

In his Amended Complaint ((the "AC"), Docket Entry No. 16), Plaintiff asserts claims for

violations of the Due Process Clause of the New York State Constitution, New York Civil

Service Law ("CSL") §72, the Americans with Disabilities Act of 1990, as amended, 42 U.S.C.

§§ 12101 <u>et</u> <u>seq.</u> (the "ADA"), the New York State Human Rights Law, New York Executive

Law §§ 296 <u>et</u> <u>seq.</u> (the "NYSHRL"), and the New York City Human Rights Law,

Administrative Code of the City of New York §§ 8-107 <u>et</u> <u>seq.</u> (the "NYCHRL"), and New York

state common law claims for intentional and negligent infliction of emotional distress and defamation.

The Court has jurisdiction of Plaintiff's claims under the ADA pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction of Plaintiff's state and local law claims pursuant to 28 U.S.C. § 1367.

Defendants move to dismiss the Amended Complaint in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Docket Entry No. 39.) The Court has considered the submissions of both parties carefully and, for the reasons discussed below, Defendants' motion is denied in part and granted in part.

<u>BACKGROUND</u>

The following recitation of relevant facts is drawn from the AC, the well-pleaded factual content of which is taken as true for purposes of this motion practice, and from documents relied upon by or incorporated into the AC.

Plaintiff Mariano Scotto has been employed by the Defendant New York City Department of Transportation (the "DOT") for 33 years. (AC ¶ 14.) During his employment, Mr. Scotto received several promotions in title, increased supervisory responsibilities, and merit pay raises. (AC ¶¶ 15-16.) His evaluations characterized his work as "very good" and "excellent." (AC ¶ 16.) In the early 2000s, Defendant DOT promoted Mr. Scotto to Highway Transportation Specialist (HTS) Level II, thereby putting him in charge of installing markings on highways in all five boroughs of New York City and supervising six employees. (AC ¶ 15.)

Mr. Scotto has been singing on the job since he was hired. (AC ¶ 14.) Prior to March 2017, neither he nor his supervisor, Ed Manglos, received any complaints that Mr. Scotto's singing was loud, disruptive, or interfering with his work performance. (AC ¶ 17.) In 2006, Mr. Scotto began seeing a psychiatrist; Mr. Manglos was aware that Mr. Scotto was

receiving psychiatric treatment and was taking medication. (AC ¶ 17; AC Exhibit A ("Kuls Report") at 2.)  In 2013, Sameer Barkho, another of Mr. Scotto's supervisors, informed Mr. Scotto that, based on Mr. Scotto's good job performance, Mr. Barkho planned to nominate him for another merit pay raise.  (AC ¶ 19.)

In 2013, Roger Weld was appointed as Chief Engineer in the Transportation Planning and Management Division; Mr. Barkho reported to him.  (AC ¶ 20.)  Mr. Weld reorganized the work deployments in the Division, assigning those in Mr. Scotto's job title to borough-specific rather than citywide responsibilities, and in that connection reducing the number of Mr. Scotto's supervisees.  (Kuls Report at 3.)  In January 2017, Alice Friedman was hired as Chief of Staff for Mr. Weld.  (AC ¶ 23.)

Shortly after March 2, 2017, Ms. Friedman received a complaint that Mr. Scotto had been observed driving a DOT vehicle in an unsafe manner.  (AC ¶ 24.)  The complainant recorded a video of the allegedly unsafe driving.  (AC ¶ 24.)  Neither Ms. Friedman nor Mr. Manglos viewed the video, and Mr. Scotto denied the allegation.  (AC ¶ 24.)  The incident was resolved and closed on March 8, 2017[1]—no counseling memo was issued, and Defendant DOT did not discipline Mr. Scotto as a result of the complaint.  (AC ¶ 25.)  On March 8, 2017, Ms. Friedman sent Mr. Scotto an email in which she complimented his singing voice but asked him to keep his singing at a "professional level."  (AC ¶ 23.)  Ms. Friedman never asked Plaintiff to stop singing.  (Kuls Report at 12.)  On March 9, 2017,[2] Mr. Scotto was singing outside of Mr.

---

[1]     The AC alleges that "the incident was resolved and closed on March 8, 2018[.]"  (See AC ¶ 25.)  The Court assumes this is a typographical error, as the evidence in the record indicates that this incident took place in 2017.

[2]     The AC alleges that the referenced meeting took place on "March 9, 2018[.]"  (See AC ¶ 26.)  The Court assumes this is a typographical error, as the evidence in the record indicates this meeting took place in 2017.

Barkho's office, where a meeting was being held.  (AC ¶ 26.)  During the meeting, Simone

Shapiro, a DOT engineer, came out and asked Mr. Scotto to be quiet.  (AC ¶ 26.)  Mr. Scotto

stopped singing.  (AC ¶ 26.)

On March 13, 2017, Messrs. Weld, Manglos and Barkho met with Mr. Scotto to

discuss complaints about his singing.  (AC ¶¶ 30-31.)  Mr. Weld addressed the March 8 email

from Ms. Friedman and complaints about Mr. Scotto's singing.  (AC ¶ 31.)  Mr. Scotto agreed to

stop singing, and described his encounter with Ms. Shapiro on March 9.  (AC ¶¶ 31-32.)  During

this meeting, Mr. Scotto attempted to tell Mr. Weld that Ms. Shapiro had been rude to him, that

he felt the extra work he performed for Defendant DOT was not acknowledged, and that he had

been denied promotions or merit raises.  (AC ¶ 32.)  Mr. Weld repeatedly interrupted Mr. Scotto

and did not provide him an opportunity to express his concerns thoroughly.  (AC ¶¶ 32-33.)  As a

result, Mr. Scotto became frustrated and banged his hands on the table. (AC ¶ 33; Kuls Report at

7.)  Mr. Scotto then took several bottles of medication out of his pocket and told his supervisors

that they caused him to take those medications.  (Id.)  Mr. Scotto was angry and left the meeting.

(Id.)  Mr. Barkho stated that he was concerned about Mr. Scotto and had never seen him act that

way.  (Kuls Report at 7.)

After the meeting, Mr. Weld called Defendant Caraway, Defendant DOT's

Agency Advocate, and sent in a complaint.  (AC ¶¶ 33, 36.)  Defendant Caraway and Ms. Marcia

Sampson, an investigator in DOT's Office of the Advocate, investigated the complaint.  (AC ¶

36.)  After interviewing Mr. Scotto and several of his supervisors and co-workers, Defendant

Caraway produced a summary of her findings from the investigation, and labeled it as

"Attachment A."  (AC ¶ 36; AC Ex. C at 2-4 ("Attachment A").)  Attachment A asserted, inter

alia, that Mr. Scotto had disrupted the office by singing on March 7, 2017; that he had been

singing and cursing outside of the March 9, 2017, meeting and that he had refused to stop singing after being asked to stop at different times by Ms. Shapiro and by another meeting attendee, Arkadiy Kagan; that Mr. Scotto had admitted that Ms. Friedman had "issued written and verbal notifications to him and requested that he stop singing"; that he had admitted "to recklessly driving his agency assigned . . . vehicle and cutting in to merge traffic on March 2, 2017"; and that Mr. Scotto had, during the investigative interview, been "easily agitated or angered during simple discussions or when his offered explanations [were] questioned or refuted . . . . [and] raised his voice continuously and used his hands to express himself frequently." (Attachment A at 3.)  Attachment A concludes:  "Due to the foregoing incidents involving Scotto, his disclosure about his medical conditions and listing of prescription medication, we request a medical examination to determine his medical fitness to perform the duties of a Highway Transportation Specialist."  (Id.)

Attachment A was provided to Mr. Scotto with a "Notice of Fitness for Duty Examination (Medical)" (AC Ex. C at 1), which directed Mr. Scotto to report for a medical examination, pursuant to Section 72 of the CSL, "to determine [Mr. Scotto's] fitness to perform the duties of [his] position."  (AC ¶ 36; Kuls Report at 9; AC Ex. C at 1.)  The notice informed Mr. Scotto that, if he were found unfit for duty, he would be placed on an involuntary leave of absence.  (AC Ex. C at 1.)  The purpose of Attachment A is to give the employee written notice of the facts giving rise to the judgment that the employee is not fit for duty, and to apprise the medical officer who will conduct the examination of the behavior that concerned the employer. (AC ¶¶ 41-42.)  On May 16, 2017, Mr. Scotto met with the designated city consulting psychiatrist, David Salvage, M.D., as directed by the notice accompanying Attachment A.  (AC ¶ 37.)  After performing general psychological and mental status examinations of Mr. Scotto, and

relying on the information in Attachment A, Dr. Salvage found that Mr. Scotto was not psychiatrically fit to continue working as an HTS.  (AC ¶¶ 37-38; Kuls Report at 9.)

On June 5, 2017, Mr. Scotto sent Defendant Caraway a letter objecting to a proposed leave of absence[3] and requested a hearing at the Office of Administrative Trials and Hearings ("OATH").  (AC ¶ 39.)  Mr. Scotto attached to his letter a certification from his treating psychiatrist, Waqar A. Siddiqui, M.D., who had been seeing Mr. Scotto regularly for ten years.  (AC ¶ 39.)  Dr. Siddiqui refuted Dr. Salvage's diagnosis, noting that Mr. Scotto has been psychiatrically stable for the past ten years and is capable of carrying out his work activities without restrictions.  (AC ¶ 39; AC Ex. E.)  During the pendency of his underlying OATH hearing proceeding (also referred to as the "Section 72 proceeding"), Mr. Scotto continued to work with restrictions.  (AC ¶ 40.)  Mr. Scotto was not permitted to drive "his agency-assigned vehicle necessary to perform inspections and to supervise his subordinates and the [DOT] no longer approved Plaintiff performing overtime work."  (Id.)

On June 14, 2017, Mr. Scotto filed a complaint with the New York State Division of Human Rights ("SDHR") alleging that, as of March 13, 2017, Defendant DOT was discriminating against him because of his "age and disability in refusing to promote him to the title of HTS Level III, in suspending his use of a City vehicle[,]… and in denying him overtime."  (AC ¶ 82.)  On August 10, 2017, the SDHR notified Plaintiff that it had received his complaint and that a copy would be sent to the U.S. Equal Employment Opportunity Commission ("EEOC") for dual filing.  (AC ¶ 83.)  On or about October 26, 2017, the SDHR sent Mr. Scotto a copy of Defendant DOT's Answer and Position Statement (the "Position Statement") in

---

[3]     As noted above, Mr. Scotto had been informed that he would be placed on an involuntary leave of absence if he were found unfit to perform his job.

response to his complaint. (AC ¶ 84.) The Position Statement reiterated the assertions of Attachment A that Plaintiff had engaged in behavior disruptive to the office and demonstrated reckless driving, and further asserted that Plaintiff was "often disruptive to the office by singing and/or cursing loudly." (AC ¶¶ 85, 87.) The Position Statement asserted that Plaintiff had been overheard singing and cursing "in a loud and distracting manner" in proximity to the March 9, 2017, meeting and that "[t]wo staff members [had] stepped out of the meeting separately to request that he stop which [Plaintiff] refused." (AC ¶ 87, quoting Position Statement.) Attachment A's assertions that Mr. Scotto had admitted receiving verbal and written warnings about singing in the office and had admitted driving recklessly on March 2, 2017, were also repeated in the Position Statement. (AC ¶ 89.) Plaintiff alleges that the factual misstatements were intentional. (AC ¶ 90.)

On December 7, 2017, in a Determination and Order after Investigation, the SDHR "determined that there was no probable cause to believe that Defendants engaged in the discriminatory practice as Plaintiff alleged." (AC ¶ 96.) On December 29, 2017, Mr. Scotto filed an appeal to the EEOC and requested that the EEOC reconsider his case. (AC ¶ 99.) On or about January 19, 2018, the EEOC issued a Dismissal and Notice of Rights to Mr. Scotto, through which the EEOC adopted the findings of the SDHR and advised Mr. Scotto of his right to file a lawsuit against the defendants in federal or state court. (AC ¶ 100.)

In October and November 2017, Mr. Scotto's OATH trial took place before Administrative Law Judge Joycelyn McGeachy-Kuls ("Judge Kuls"). (Kuls Report at 1.) By letter dated February 2, 2018, Judge Kuls issued a Report (the "Kuls Report" or "Report") finding that Mr. Scotto's mental health condition had not made him unfit to perform his job duties and recommending that he be "returned to performing all duties and responsibilities of

Highway Transportation Specialist Level II." (AC ¶ 63; Kuls Report at 19.)  Contrary to Judge

Kuls' admonition in the letter transmitting her Report and the notification requirements of the

CSL, Defendants did not notify Mr. Scotto's attorney of the right to comment on the Report, and

Defendants did not act on the Report until almost two months after the Report was issued.  (AC

¶¶ 64-65, 67.)  On March 23, 2018, Defendant DOT issued its Notice of Agency Final

Determination ("the Notice"), in which it accepted the entire Report and found Mr. Scotto "fit

for duty."  (AC ¶ 68; AC Ex. B (the "Notice).)  Defendants nevertheless continue to deny Mr.

Scotto permission to operate a City vehicle to perform his supervisory duties, deny him overtime

work, and have not returned him to performing all of the duties and responsibilities of a HTS

Level II.  (AC ¶ 69.)

DISCUSSION

Defendants, moving pursuant to Federal Rules of Civil Procedure 12(b)(1) and

12(b)(6), argue that Plaintiff's official-capacity claims against the individual Defendants should

be dismissed as duplicative, that Plaintiff has failed to state a discrimination claim upon which

relief may be granted pursuant to the federal ADA, and that the AC otherwise fails to state any

claim upon which relief may be granted.

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient

factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  Ashcroft

v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570

(2007)).  A proper complaint cannot simply recite legal conclusions or bare elements of a cause

of action; it must plead factual content that "allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.

Under Rule 12(b)(1), a district court may dismiss a complaint for lack of subject

matter jurisdiction when the court "lacks the statutory or constitutional power to adjudicate it."

Arar v. Ashcroft, 532 F.3d 157, 168 (2d Cir. 2008) (vacated on other grounds) (internal citations and quotation marks omitted); see also Fed. R. Civ. P. 12(h)(3) (providing that Court must dismiss an action if it determines it lacks subject matter jurisdiction). "The plaintiff bears the burden of establishing jurisdiction in a Rule 12(b)(1) motion . . . by a preponderance of the evidence." Samet v. Rodriguez, No. 1:16-CV-7072-GHW, 2018 WL 1274752, at *1 (S.D.N.Y. Mar. 8, 2018). The Court turns first to Defendants' arguments concerning the official-capacity claims.

Claims Against Defendants Trottenberg and Caraway
in their Official Capacities (All Causes of Action)

As a threshold matter, Defendants move to dismiss Mr. Scotto's claims against Defendants Trottenberg and Caraway in their official capacities as duplicative of Mr. Scotto's claims against the City of New York. Plaintiff raises no arguments in opposition to this aspect of Defendants' motion. "[I]n a suit against a public entity, naming officials of the public entity in their official capacities adds nothing to the suit." Davis v. Stratton, 360 F. App'x 182, 183 (2d Cir. 2010) (internal quotation marks omitted). In such cases, district courts within this Circuit consistently dismiss claims asserted against officials in their official capacities as duplicative. See Ball v. City Council, 17-CV-4828 (JMF), 2018 U.S. Dist. LEXIS 165402, at *6 (S.D.N.Y. Sep. 26, 2018).

Defendants' motion is, accordingly, granted to the extent it seeks dismissal of the official-capacity claims against Defendants Trottenberg and Caraway as duplicative of Plaintiff's claims against the City.

ADA Discrimination Claim (Second Cause of Action)

   Mr. Scotto claims that Defendants discriminated against him on the basis of their perception that his disability rendered him unable to perform the duties of his job, in violation of the ADA, by denying him the use of a City car and overtime opportunities. To establish a prima facie claim of disability-based discrimination under the ADA, a plaintiff must demonstrate by a preponderance of the evidence that: "(1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability." Sista v. CDC Ixis N. Am., Inc., 445 F.3d 161, 169 (2d Cir. 2006) (internal quotation marks omitted). There is no question or dispute between the parties that the complaint's allegations are sufficient to establish that Defendant DOT is subject to the ADA, that Mr. Scotto is disabled within the meaning of the ADA, and that Mr. Scotto is otherwise qualified to perform the essential functions of his job as an HTS Level II. Defendants do not dispute the proposition that denying Mr. Scotto use of a City vehicle and overtime opportunities constitute adverse employment actions. Defendants argue, however, that the AC should be dismissed because Plaintiff fails to allege facts sufficient to support plausibly the propositions that Defendants perceived Plaintiff as disabled and took the adverse actions because of that perception.

   In order to state a cause of action for disability discrimination under the ADA, a plaintiff must allege that he suffered an adverse employment action because of his disability, supporting the charge with factual allegations that rise "above the speculative level." Perry v. NYSARC, Inc., 424 F. App'x 23, 25 (2d Cir. 2011). Defendants argue that Mr. Scotto fails to plead any facts indicating that he was treated improperly because of his disability. Defendants note that Mr. Scotto's supervisors were aware of his medications and his psychiatric treatment

since at least 2013, yet Mr. Scotto claims that the adverse employment action only began after the meeting that took place on March 13, 2017. Defendants reason that Mr. Scotto's permitted use of a City vehicle and overtime opportunities for "numerous years" while seeing a psychiatrist and taking prescription medications demonstrates conclusively that no adverse employment action was taken because of his alleged disability. Defendants contend that the adverse actions were, rather, the result of Mr. Scotto's "performance and actions" at the March 13, 2017, meeting.

While a fact finder might conclude that Defendants' actions were taken solely on the basis of behavior at the meeting rather than because of a perception that the behavior was indicative of underlying mental health problems that rendered Mr. Scotto unfit for duty, the factual allegations in the AC and its exhibits are sufficient to support an inference of the requisite connection to a perceived disability. Plaintiff alleges that, during the March 13, 2017 meeting, Mr. Scotto took several bottles of medication out of his pocket and told his supervisors that they had caused him to take those medications. (AC ¶ 33.) After the meeting, Mr. Barkho stated that he was concerned about Mr. Scotto and had never seen him act that way and later, in response to a direction from Mr. Weld to document what had occurred at the March 13 meeting, wrote that, "based on the 'strange actions and behaviors from [Mr. Scotto], I recommend that he needs help.'" (Kuls Report at 7; AC ¶ 34.) Mr. Weld sent a complaint to Defendant DOT's Office of the Advocate, which Defendant Caraway investigated by interviewing Mr. Scotto and several of his supervisors and co-workers, leading to a recommendation that Mr. Scotto be found unfit for duty by reason of mental health problems. These facts, construed in the light most favorable to Plaintiff, are sufficient to support an inference that Defendant's actions in response to the March 13, 2017, meeting were motivated by a perception that Mr. Scotto's mental health condition

rendered him unable to perform his job.  Defendants' motion is therefore denied to the extent it seeks dismissal of Plaintiff's ADA claim against Defendant City.[4]

The Court now turns to Defendants' arguments concerning Plaintiff's state law claims.

## Due Process Claim under New York State Constitution (First Cause of Action)

In his First Cause of Action, Plaintiff appears to be alleging that Defendants have violated his state due process rights in two respects: (1) Defendants' failure to comply with the Kuls Report and Defendant DOT's own Notice of Final Agency Determination; and (2) Defendants' prosecution of the OATH proceeding using a document containing false information about Mr. Scotto.  The Court will discuss each of these claims separately.

### Failure to Comply with the Kuls Report and the Notice

In his First Cause of Action, Plaintiff claims that Defendants have violated his due process rights by failing to comply with the Kuls Report and Defendant DOT's Notice of Agency Final Determination (the "Notice").  The Due Process Clause of Article I, Section 6, of the New York State Constitution provides, in relevant part, that: "No person shall be deprived of life, liberty, or property without due process of law."  To ensure that public employees are afforded their constitutional right to due process of law in connection with, inter alia, proposed involuntary leaves of absence, Section 72 of the Civil Service Law provides that employees

---

[4]     The claim is dismissed to the extent it is asserted against Defendant Caraway individually, because the ADA does not authorize claims against individuals who are not themselves employers within the meaning of the statute. See, 42 U.S.C. § 12111(5)(A); see also, Viruet v. City of New York, No. 16-CV-8327 (JGK), 2019 WL 1979325, at *13 (S.D.N.Y. May 3, 2019) ("Individuals cannot be named as defendants in ADA suits in either their official or representative capacities.") (internal quotation marks omitted).

contesting a proposed leave of absence due to a disability are entitled to an OATH hearing. Under CSL section 72(1), an employer must "render a final determination within ten working days of the date of receipt of the [OATH] hearing officer's report and recommendation" and "within seventy-five days of the receipt of the request for review." (N.Y. Civ. Serv. Law §72(1) (McKinney 2011).)

Mr. Scotto alleges that Defendants failed to take timely action on the Kuls Report and that, even though the DOT has adopted the Kuls Report in full, Defendants continue to deprive him of its benefit without due process of law by failing to restore him to the full duties of the HTS Level II position.

Defendants, noting that Article 78 of the New York state Civil Practice Law and Rules authorizes a mandamus action to compel an administrative agency's compliance with state law, argue that Plaintiff has failed to state a claim for deprivation of due process and has asserted his noncompliance claim in the wrong forum. Defendants are correct on both points. State law provides Plaintiff with an opportunity to litigate his claims concerning Defendants' noncompliance with the CSL, and Plaintiff should have brought his challenges to Defendants' compliance with the administrative determination as an Article 78 Special Proceeding. See New York State Civil Practice Law and Rules ("CPLR") §78(1).

Defendants' motion is therefore granted to the extent it seeks the dismissal of Plaintiffs' due process claims that are premised on noncompliance with the Civil Service Law and the adopted Kuls Report. The dismissal is without prejudice to pursuit of an Article 78 proceeding.

<u>Prosecution of the OATH Proceeding Using False Information</u>

In his Opposition, Mr. Scotto makes a brief, conclusory statement that Defendants' conduct in commencing and prosecuting the OATH proceeding based upon Attachment A, which he asserts contained false statements, violated his rights under the New York State Constitution and his rights to procedural due process under Section 72 of the CSL. Mr. Scotto cites no legal authority in support of this argument and it is clear that he was afforded the opportunity to challenge the statements in the OATH hearing context. He has, accordingly, failed to state a viable due process claim in this regard, and his First Cause of Action will be dismissed in its entirety.

<u>Discrimination Claims under the NYSHRL and NYCHRL</u>
<u>(Second, Third and Fourth Causes of Action)</u>

Mr. Scotto pursued his claims of disability-based discrimination through administrative proceedings with the SDHR, which culminated in a determination by that agency of no probable cause. The NYSHRL provides that "[a]ny person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages . . . unless such person had filed a complaint hereunder or with any local commission on human rights. . . ." (N.Y. Exec. Law §297(9) (McKinney 2013).)

This election of remedies provision "precludes a plaintiff from pursuing his discrimination claims in a court of law when the same claims were previously brought before a local administrative agency." <u>DuBois v. Macy's Retail Holdings, Inc.</u>, 533 F. App'x 40, 41 (2d Cir. 2013) (citing N.Y. Exec. Law. § 297 (9)). "The election of remedies bar is jurisdictional, such that claims dismissed pursuant to it must be dismissed under Fed. R. Civ. P. 12(b)(1) rather

than 12(b)(6)." Forman v. City of New York, No. 14-CV-6282-LTS, 2017 WL 1167334, at *6 (S.D.N.Y. Mar. 27, 2017) (internal quotations and citations omitted).

Mr. Scotto's NYCHRL disability discrimination claim is barred under a parallel election of remedies provision of the New York City Administrative Code. See N.Y.C. Admin. Code § 8–502(a).[5]

Accordingly, the Court grants Defendants' motion insofar as it seeks the dismissal of the disability discrimination claims that are asserted under the NYSHRL and the NYCHRL in the Second, Third, and Fourth Causes of Action.

Retaliation Claims under the NYCHRL and NYSHRL
(Third and Fourth Causes of Action)

Plaintiff alleges that Defendants retaliated against him in violation of the NYCHRL and NYSHRL for filing complaints with the SDHR and the EEOC, by refusing to restore his employment duties and perquisites after he was vindicated in his Section 72 proceeding against Defendants. The NYCHRL provides that "[i]t shall be an unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has [ ] opposed any practice forbidden under this chapter." N.Y.C. Admin. Code § 8-107(7). The NYSHRL includes a substantially similar provision. See N.Y. Exec. Law § 296(7). In order for a plaintiff to establish a prima facie case of retaliation under the NYCHRL, he must show that: "(1) he

_____

[5] "[A]ny person claiming to be a person aggrieved by an unlawful discriminatory practice . . . or by an act of discriminatory harassment or violence . . . shall have a cause of action in any court of competent jurisdiction for damages . . . unless such person has filed a complaint with the city commission on human rights or with the state division of human rights with respect to such alleged unlawful discriminatory practice or act of discriminatory harassment or violence." N.Y.C. Admin. Code § 8–502(a).

participated in a protected activity known to the defendant; (2) the defendant took an employment action that disadvantaged the plaintiff; and (3) that a causal connection exists between the protected activity and the alleged adverse employment action." Fattoruso v. Hilton Grand Vacations Co., LLC, 873 F. Supp. 2d 569, 580 (S.D.N.Y. 2012), aff'd, 525 F. App'x 26 (2d Cir. 2013). A plaintiff engages in a protected activity when he opposes any practice deemed unlawful under the NYCHRL, or when he has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the NYCHRL." Id. (internal quotation marks omitted). Retaliation claims under the NYCHRL must be interpreted broadly. Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 112 (2d Cir. 2013).

Mr. Scotto argues that his claims for retaliation under the NYCHRL arose on March 23, 2018, when Defendant DOT issued the Notice accepting the Kuls Report in full and finding Mr. Scotto "fit for duty," but did not restore Mr. Scotto to the duties and perquisites of an HTS Level II employee. Mr. Scotto claims that Defendants have continued to prevent him from resuming his duties and responsibilities as an HTS Level II. Mr. Scotto contends that Defendants' inaction is the product of retaliation for Mr. Scotto's filing of his complaints of discrimination with the SDHR and the EEOC, and his participation in the OATH proceeding.

Defendants argue that Mr. Scotto has failed to allege facts sufficient to establish a causal connection between his assertion of his rights and the Defendants' allegedly retaliatory conduct. The Defendants note that the conduct at issue began on March 13, 2017, well before Mr. Scotto filed his SDHR and EEOC complaints or participated in the OATH proceeding, and continued to occur after Mr. Scotto's assertion of his rights, and they contend that these facts negate any plausible inference of any retaliatory animus. To support their argument, Defendants cite case law holding that "an employer's continuation of a course of conduct that had begun

before the employee complained does not constitute retaliation because, in that situation, there is no causal connection between the employee's protected activity and the employer's challenged conduct." Melman v. Montefiore Med. Ctr., 98 A.D.3d 107, 129 (1st Dep't 2012). This principle is, however, inapplicable here, where the factual context of Defendants' course of conduct changed as a result of the protected activity.

Under the NYCHRL, "an employer cannot avoid scrutiny of its post-complaint conduct by virtue of having begun to discipline an employee pre-complaint." Cadet-Legros v. New York Univ. Hosp. Ctr., 135 A.D.3d 196, 207 (N.Y. App. Div. 2015) (noting possibility that retaliation cause of action for termination could be sustained despite continuous progressive discipline prior to protected activity, which "could be the 'extra factor' that pushes an employer from a posture of dissatisfaction . . . to a determination to discharge the employee"). In the instant action, Mr. Scotto alleges that Defendants began denying him access to a City vehicle and overtime opportunities in March 2017 because they perceived Mr. Scotto to be psychiatrically unfit to perform the duties and responsibilities of an HTS Level II, and that they continued those restrictions after Dr. Salvage issued his determination that Plaintiff was unfit. Mr. Scotto then began participating in a continuous course of protected activities, commencing with the initial filing of his complaint with the SDHR in June 2017 and continuing through his vindication in February 2018. Once Defendant DOT issued the Notice of Agency Final Determination in March 2018 adopting the Kuls Report and finding Mr. Scotto "fit for duty," there was no putative lack of fitness for duty to justify Defendants' failure to treat Mr. Scotto as an ordinary HTS Level II. Under these circumstances, given no other apparent justification for the disparate treatment, the facts alleged support plausibly an inference that the post-Kuls Report disparate treatment was inflicted as retaliation for Mr. Scotto's protected activity. The protected activity

could well have been the "extra factor" that motivated Defendants to continue to treat Plaintiff as if he were not fit to do his job even though they agreed that he was fit for duty.

Mr. Scotto also asserts a cause of action for retaliation under the NYSHRL, which similarly requires that a plaintiff asserting a retaliation claim demonstrate that: (1) he engaged in a protected activity; (2) the employer was aware of the protected activity; (3) the employer took adverse employment action against him; and (4) a causal connection exists between the protected activity and the adverse action.  Summa v. Hofstra Univ., 708 F.3d 115, 125 (2d Cir. 2013).  For the reasons explained in the foregoing NYCHRL analysis, Mr. Scotto's NYSHRL claim for retaliation survives as well.

Accordingly, Plaintiff has pleaded sufficiently his retaliation claims and Defendants' motion is denied as to the retaliation claims asserted against the City in the Third and Fourth Causes of Action.[6]


Intentional Infliction of Emotional Distress Claim (Fifth Cause of Action)

In his Fifth Cause of Action, Mr. Scotto asserts a claim against Defendants DOT and Caraway for intentional infliction of emotional distress ("IIED").  Under New York law, a successful claim for IIED "requires a showing of (1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress."  Stuto v. Fleishman, 164 F.3d 820, 827 (2d Cir. 1999).  "New York sets a high threshold for

---

[6]     To the extent the claims are asserted against Defendant Caraway in her individual capacity, they are dismissed, as Plaintiff has alleged no facts indicating that Ms. Caraway has any involvement or authority with respect to the restoration of Plaintiff's HTS Level II duties and perquisites.

conduct that is 'extreme and outrageous' enough to constitute intentional infliction of emotional distress." <u>Bender v. City of New York</u>, 78 F.3d 787, 790 (2d Cir. 1996). To support a viable cause of action, conduct must be "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized society." <u>Id.</u> (internal quotation marks omitted); <u>see</u>, <u>e.g.</u>, <u>Nigro v. Pickett</u>, 39 A.D.3d 720 (2d Dep't 2007) (plaintiffs set forth a claim for IIED where defendant allegedly threatened to make public false allegation that the plaintiffs subjected her to sexual harassment and sexual assault); <u>Vasarhelyi v. New Sch. for Soc. Research</u>, 230 A.D.2d 658 (1st Dep't 1996) (plaintiff sufficiently pled outrageous conduct to sustain a claim for IIED where defendant allegedly used his position of power to impair plaintiff's professional standing "through a deliberate and malicious campaign of harassment or intimidation.").

Here the factual allegations of the AC, read in the light most favorable to Plaintiff, could support an inference that Ms. Caraway deliberately made materially false statements designed to provide a seemingly objective factual basis for a medical finding that Mr. Scotto was unfit, for mental health reasons, to perform his job. Such a finding would cast Mr. Scotto, who had worked successfully for the DOT for more than 30 years despite known psychiatric issues, in a profoundly negative light, lead to an involuntary leave of absence depriving him of his livelihood, and likely disqualify him from other employment. It cannot be said, at this early stage of the proceedings, that such conduct is not sufficiently outrageous or extreme to support the first element of the cause of action.

Plaintiff has also proffered facts sufficient to satisfy the intent prong of an IIED claim. Defendant Caraway wrote in Attachment A that Mr. Scotto admitted to driving recklessly during his interview with the DOT's Office of the Advocate. This was false. (Kuls Report at

12.)  Defendant Caraway wrote that Mr. Scotto admitted that Ms. Friedman had requested him to stop singing.  This was false.  (Id.)  Defendant Caraway wrote that Mr. Scotto became angered, easily agitated, and raised his voice continuously during the interview with the Advocate's Office.  This was false.  (Id.)  Indeed, Judge Kuls, after reviewing the transcript and the audio recording of Mr. Scotto's interview, found that Mr. Scotto did not admit these facts, that he "did not raise his voice continuously as reported, nor did he sound angry on the recording," and that he "generally remained cooperative."  (Kuls Report at 12.)  Furthermore, Judge Kuls determined that that the DOT had come forward with no support for the most damaging factual statements in Attachment A, including its assertions that Mr. Scotto disrupted the office by singing, was previously advised of his disruptive behavior, cursed during a meeting, and disregarded both instructions and requests to stop singing.  (Id. at 11-12.)  These findings of false reporting regarding Mr. Scotto's behavior and state of mind in Attachment A are indicative of, at a minimum, Defendant Caraway's reckless disregard of a substantial probability of causing Mr. Scotto emotional distress at the time Attachment A was issued.

Mr. Scotto has also sufficiently pled facts supporting an inference that the Defendants' false statements caused him severe distress.  "[T]he emotional distress suffered by the plaintiff [alleging an IIED claim] must be so severe that no reasonable man could be expected to endure it."  Wiener v. Unumprovident Corp., 202 F. Supp. 2d 116, 122 (S.D.N.Y. 2002) (internal quotation marks omitted).  "[I]n many cases the extreme and outrageous character of the defendant's conduct is in itself important evidence that the distress has existed."  Restatement (Second) of Torts § 46 (1965).  Mr. Scotto was falsely accused of violating company policies, acting belligerently and admitting to recklessly driving, was diagnosed as unfit for his job as an HTS Level II, forced to assert his rights against his employer through

judicial remedies provided by OATH, SDHR, and the EEOC, and was continuously denied restoration of his employment duties and perquisites both before and after he was found fit for duty by Judge Kuls and the DOT. Defendants' conduct, which the Court has found may plausibly qualify as extreme and outrageous, caused Mr. Scotto distress of a kind that no reasonable person should have to endure through no fault of his own, and that level of distress plausibly could be found severe upon the facts alleged.

However, Plaintiff's claim must be dismissed to the extent it is predicated on Defendants' submissions and statements in connection with the SDHR, EEOC and OATH proceedings. New York recognizes an absolute privilege for written and oral statements made in connection with judicial proceedings. See D'Annunzio v. Ayken, Inc., 876 F. Supp. 2d 211, 216 (E.D.N.Y. 2012) ("[A] statement made in the course of a judicial proceeding is absolutely privileged under New York common law so long as it is considered material and pertinent to the litigation."). This privilege extends to statements made in connection with quasi-judicial proceedings before the SDHR and EEOC and would similarly cover the OATH proceedings. See Silver v. Mohasco Corp., 62 N.Y.2d 741, 743 (1984) (finding that "statements made before the State Division of Human Rights are privileged"); Bernstein v. Seeman, 593 F. Supp. 2d 630, 636 (S.D.N.Y. 2009) (finding that "[absolute] privilege applies to statements submitted to agencies such as the EEOC."). In light of this privilege, Plaintiff cannot rely upon Defendants' advancement of the challenged statements in connection with the agency proceedings as a basis for his IIED claim.

A qualified privilege applies to Defendants' intra-agency statements relating to Mr. Scotto's fitness for employment. "[A]n employer has the right to assess an employee's performance on the job without judicial interference." Dillon v. City of New York, 261 A.D.2d

34, 38 (1st Dep't 1999) (internal quotation marks omitted). For this reason, "statements made by defendants in disciplinary memoranda evaluating plaintiff's performance are protected by a qualified privilege." <u>McNaughton v. City of N.Y.</u>, 234 A.D.2d 83, 84 (1st Dep't 1996). However, this qualified privilege does not protect statements where the defendant was motivated by actual malice or ill will. <u>Kalika v. Stern</u>, 911 F. Supp. 594, 603 (E.D.N.Y. 1995). "Under New York law, proof of malice is governed by two standards: the first amendment malice standard set forth by the United States Supreme Court in <u>New York Times Co. v. Sullivan</u>, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), and the common law malice standard." <u>Id.</u> Under the first amendment standard, "the plaintiff must demonstrate that the statements were made with a high degree of awareness of their probable falsity." <u>Id.</u> (internal quotation marks omitted). Under the common law standard, malice is defined as "spite or ill will" and refers to the defendant's motivation for making the privileged statements. <u>Id.</u> As discussed above, Judge Kuls found that many of the material statements Defendant Caraway reported in Attachment A about Mr. Scotto were unsubstantiated, and that some, for example Mr. Scotto's own alleged admissions, were entirely false. (<u>See</u> Kuls Report at 12.) In her position as Agency Advocate for the DOT, Defendant Caraway was responsible for investigating Mr. Weld's complaint thoroughly and reporting her findings accurately. Therefore, Defendant Caraway is accountable for the truthfulness of her report. For these reasons, the Court finds that an issue of fact remains as to whether Defendant Caraway acted with malice such that qualified privilege does not apply to Attachment A.

Accordingly, as to the Fifth Cause of Action, Defendants' motion is granted with respect to Plaintiff's claim to the extent it is based on as a result of statements made in

connection with the SDHR, EEOC and OATH proceedings, and denied with respect to Plaintiff's

IIED claim based on intra-agency use of Attachment A.


Negligent Infliction of Emotional Distress Claim (Sixth Cause of Action)

Plaintiff also asserts a claim against Defendant DOT and/or Defendant Caraway

for negligent infliction of emotional distress ("NIED").  Under New York law, "[a] plaintiff

suffering purely emotional injury may recover on a theory of [NIED] if either (1) a bystander

who was in the zone of danger suffers emotional trauma as a result of their observations or (2)

the defendant breaches a direct duty to plaintiff which results in emotional injury to the

plaintiff."  Stephens v. Shuttle Assocs., L.L.C., 547 F. Supp. 2d 269, 275 (S.D.N.Y. 2008)

(internal quotation marks omitted).  Under the bystander theory, a plaintiff may recover for a

purely emotional injury when "(1) [he] is threatened with physical harm as a result of defendant's

negligence; and (2) consequently [he] suffers emotional injury from witnessing the death or

serious bodily injury of a member of [his] immediate family."  Mortise v. United States, 102

F.3d 693, 696 (2d Cir. 1996).  Under the direct duty theory, "a plaintiff has a cause of action for

[NIED] if [he] suffers an emotional injury from defendant's breach of a duty which unreasonably

endangered [his] own physical safety."  Id.  "The duty in such cases must be specific to the

plaintiff, and not some amorphous, free-floating duty to society."  Id.  Therefore, New York ties

the viability of an NIED claim to the existence or threat of physical harm either to the plaintiff or

an immediate family member.  See Campoverde v. Sony Pictures Entm't, No. 01 Civ. 7775, 2002

U.S. Dist. LEXIS 18347, at *41 (S.D.N.Y. Sep. 30, 2002), and examples cited therein.

Plaintiff alleges that he suffered severe emotional distress as a result of

Defendants' actions, supporting this assertion with citations to his own OATH testimony and the

report of his treating psychiatrist. However, Plaintiff neither alleges that he was threatened with physical harm nor that he witnessed death or serious bodily injury. The facts pleaded in the AC also do not support an inference that the DOT owed or breached a specific duty to Mr. Scotto that related to physical safety. See Cucchi v. New York City Off-Track Betting Corp., 818 F. Supp. 647, 656 (S.D.N.Y. 1993) (finding that an employee's claim for wrongful termination "does not give rise to a claim for negligent infliction of emotional distress because a corporation owes the same duties to all employees."). The AC is, therefore, insufficient to address the elements of a cause of action for NIED.

Accordingly, Defendants' motion is granted as to the Sixth Cause of Action.

## Defamation Claim (Seventh Cause of Action)

In his Seventh Cause of Action, Mr. Scotto argues that Defendant DOT and/or Defendant Caraway defamed him by maliciously and recklessly reporting false statements in Attachment A, and then intentionally reasserting the false statements in their Position Statement in connection with the SDHR and EEOC proceedings. To successfully plead a cause of action for defamation, a plaintiff must allege "a false statement, published without privilege or authorization to a third party, constituting fault as judged by, at a minimum, a negligence standard, and it must either cause special harm or constitute defamation per se." Dillon, 261 A.D.2d at 38. "If a defamatory communication is conditionally privileged, the plaintiff may nonetheless prevail by establishing that it was published excessively . . . or that it was made with malice." Konikoff v. Prudential Ins. Co. of Am., 234 F.3d 92, 98 (2d Cir. 2000) (internal citations and quotation marks omitted). "[A]ctual malice means publication with a high degree

of awareness of the publication's probable falsity or while the defendant in fact entertained serious doubts as to the truth of the publication." Id. at 99 (internal quotation marks omitted).

As discussed in detail above in connection with Mr. Scotto's IIED claim, the facts pleaded in the AC are sufficient to support an inference that Defendants made false statements in Attachment A, and subsequently in the Position Statement. Plaintiff has therefore sufficiently pled the first element of his defamation claim. However, because the Defendants' statements made in the course of the SDHR and EEOC proceedings are absolutely privileged, such statements cannot form the basis of a defamation claim. See Silver, 62 N.Y.2d at 743; Bernstein, 593 F. Supp. 2d at 636; Chimarev v. TD Waterhouse Inv'r Servs., Inc., 99 F. App'x 259, 262-63 (2d Cir. 2004) (finding critical comments made by employer in employment discrimination litigation about former employee's work performance were shielded by absolute privilege from liability for defamation). Attachment A, on the other hand, is subject to qualified privilege immunity because it is a "disciplinary [memorandum] evaluating plaintiff's performance." McNaughton, 234 A.D.2d at 84. Because, as the Court found above in connection with Plaintiff's IIED claim, the facts pleaded in the AC are sufficient to give rise to an inference of actual malice such that Attachment A may not be privileged, the Court proceeds with its analysis of Mr. Scotto's defamation claim to the extent it concerns statements in Attachment A.

"To satisfy the publication element of defamation, the defendant must have published a defamatory statement of fact to a third party." Medcalf v. Walsh, 938 F. Supp. 2d 478, 485 (S.D.N.Y. 2013). However, "[a] good faith communication upon any subject matter in which the speaker has an interest, or in reference to which he has a duty, is qualifiedly privileged if made to a person having a corresponding interest or duty." Present v. Avon Prod., Inc., 253 A.D.2d 183, 187 (1st Dep't 1999). For example, intra-corporate communications made in good

faith regarding the employer's business are subject to the qualified common interest privilege.

Id. "The same is true of statements by an outside vendor or independent contractor." Id. at 187-88 (citing Clark v. Somers, 162 A.D.2d 982 (4th Dep't 1990) (holding that allegedly defamatory statements made by contract computer consultant for company to other company employees, all of whom were concerned with hiring of contract employees for company, were qualifiedly privileged)). "[T]o overcome the privilege, plaintiff needs to challenge the good faith of the defendants by showing that they acted with malice[,]" which "requires a showing of reckless disregard for the truth." Present, 253 A.D.2d at 188; Carone v. Venator Grp., Inc., 11 A.D.3d 399, 400 (1st Dep't 2004)

Plaintiff asserts that the publication element is satisfied because Attachment A was provided to Dr. Salvage, who conducted his medical examination of Plaintiff's fitness for duty in reliance on the statements contained in Attachment A. The DOT hired Dr. Salvage as a consulting psychiatrist for the City and tasked him with the responsibility of determining whether Mr. Scotto was mentally fit to perform his duties as an HTS Level II. The DOT's decision to enlist Dr. Salvage's expertise could have been made in good faith, as DOT has both an interest and a duty to ensure its employees are competent. As a medical professional, Dr. Salvage similarly has an interest and duty to ensure his medical diagnoses are accurate. Therefore, the DOT's transmission of Attachment A to Dr. Salvage for the purpose of evaluating Mr. Scotto's fitness could constitute a communication similar to intra-corporate communications or communications between an employer and an outside contractor, where all those privy to the communications have an interest in the employer's business. However, the applicability of the privilege would not warrant dismissal of Mr. Scotto's defamation claim at this stage because, as the Court found in the discussion above, an issue of fact remains as to whether Defendant

Caraway acted with malice or reckless disregard for the truth of the content of Attachment A. Additionally, given this finding, it follows that Mr. Scotto has sufficiently pled the third element of his defamation claim, which requires at least negligent conduct.

With regard to the final element of a defamation claim, "special harm" requires economic or pecuniary loss that "flow[s] directly from the injury to reputation caused by the defamation, not from the effects of defamation." Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC, 813 F. Supp. 2d 489, 550 (S.D.N.Y. 2011). "Defamation per se is an exception to the requirement that a plaintiff must prove special harm. Defamation per se consists of any one of the following: (1) a statement charging an individual with a serious crime; (2) a statement that tends to injure another in his or her trade, business, or profession; (3) a statement that claims an individual has a 'loathsome disease;' or (4) a statement 'imputing unchastity to a woman.'" Id. A statement that tends to injure plaintiff in his trade, business or profession "must be targeted at the specific standards of performance relevant to the plaintiff's business and must impute conduct that is of a kind incompatible with the proper conduct of the business, trade, profession or office itself." Id. (internal quotation marks omitted); see also, Van-Go Transp. Co. v. New York City Bd. of Educ., 971 F. Supp. 90, 98 (E.D.N.Y. 1997) ("Reputational injury to a person's business, or to a company, consists of a statement that either imputes some form of fraud or misconduct or a general unfitness, incapacity, or inability to perform one's duties"). "[S]tatements attributing mental illness to a plaintiff, when made in the employment context," have been found to constitute defamation per se. Fleming v. Laakso, No. 18-CV-1527RABCM, 2019 WL 959521, at *9 (S.D.N.Y. Feb. 5, 2019), report and recommendation adopted sub nom. Fleming v. Laasko, No. 18-CV-1527(RA), 2019 WL 952349 (S.D.N.Y. Feb. 26, 2019).

Mr. Scotto has sufficiently pled both special harm and defamation per se. He alleges that the facts contained in Attachment A, for example his alleged cursing, disruptive singing and behavior, admission to reckless driving, as well as Dr. Salvage's subsequent diagnosis of Mr. Scotto's unfitness to perform his job responsibilities, which was a product of Dr. Salvage's reliance on Attachment A, have caused Mr. Scotto to suffer both injury to his professional reputation, as well as economic loss resulting from the denial of overtime opportunities.

Accordingly, as to the Seventh Cause of Action, Defendants' motion is granted with respect to Plaintiff's claim in connection with Defendants' statements made in the course of the SDHR and EEOC proceedings, and denied with respect to Plaintiff's claim for defamation insofar it arises from Attachment A.

C<span>ONCLUSION</span>

For the foregoing reasons, Defendants' motion to dismiss Plaintiff Mariano Scotto's claims is granted in part and denied in part as follows:

1. The Court grants Defendants' motion as to Plaintiff's claims against Polly Trottenberg and Erica Caraway in their official capacities. Those claims are dismissed as duplicative of Plaintiff's claims against the City;

2. First Cause of Action: The Court grants the Defendants' motion. The dismissal is without prejudice to the prosecution of an Article 78 Special Proceeding;

3. Second Cause of Action: The Court denies Defendants' motion as to Plaintiff's ADA discrimination claim against the City, and grants Defendants' motion as to Plaintiff's ADA claim against Defendant Caraway and as to Plaintiff's NYSHRL discrimination claim;

4. Third Cause of Action: The Court denies Defendants' motion as to Plaintiff's NYCHRL retaliation claim against the City, and grants Defendants' motion as to Plaintiff's retaliation claim against Defendant Caraway and as to Plaintiff's NYCHRL discrimination claim;

5. Fourth Cause of Action: The Court denies Defendants' motion as to Plaintiff's NYSHRL retaliation claim against the City, and grants Defendants' motion as to Plaintiff's retaliation claim against Defendant Caraway and Plaintiff's NYSHRL discrimination claim;

6. Fifth Cause of Action: The Court grants Defendants' motion to dismiss the claim to the extent it is based on statements made in the course of the SDHR, EEOC and OATH proceedings. Defendants' motion is denied with respect to Plaintiff's claim based on statements contained within Attachment A.

7. Sixth Cause of Action: The Court grants the Defendants' motion.

8. Seventh Causes of Action: The Court grants Defendants' motion to dismiss Plaintiff's defamation claim to the extent it is based on statements made in the course of the SDHR and EEOC proceedings. Defendants' motion is denied with respect to Plaintiff's defamation claim based on statements contained within Attachment A.

The claims surviving Defendants' motion to dismiss comprise Mr. Scotto's discrimination claim against the City of New York under the ADA, his retaliation claims against the City of New York under the NYSHRL and NYCHRL, and his IIED and defamation claims with respect to Attachment A against the City of New York and Defendant Caraway. This case

will be referred to a Magistrate Judge for general pretrial management.

This Memorandum Opinion and Order resolves Docket entry no. 39.

SO ORDERED.

Dated: New York, New York
December 9, 2019

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge